ORIGINAL

1  Robert S. Green (SBN 136183)
   Avin P. Sharma (SBN 233328)
2  **GREEN WELLING, LLP**
   595 Market Street, Suite 2750
3  San Francisco, CA  94105
   Telephone: (415) 477-6700
4  Facsimile: (415) 477-6710
   cand.uscourts@classcounsel.com
5

6  Eric L. Zagar
   James H. Miller
7  **SCHIFFRIN & BARROWAY, LLP**
8  280 King of Prussia Road
   Radnor, PA  19087
9  Telephone: (610) 667-7706
   Facsimile: (610) 667-7056
10 ezagar@sbclasslaw.com

11

12 *Attorneys for Plaintiff*

13                **UNITED STATES DISTRICT COURT**

14               **NORTHERN DISTRICT OF CALIFORNIA**

15 KENNETH DOSSETT, Derivatively on Behalf          Case No.
   of Nominal Defendant MCAFEE, INC.,
16

17              Plaintiff,                           **SHAREHOLDER DERIVATIVE**
                                                     **COMPLAINT**
18      v.

19 DENNIS L. CLINE, LESLIE DENEND,
20 ROBERT DUTKOWSKY, PROBHAT K.
   GOYAL, GENE HODGES, WILLIAM L.                    **JURY TRIAL DEMANDED**
21 LARSON, ARTHUR MATIN, ZACHARY A.
22 NELSON, DENIS O'LEARY, ROBERT

23

24

25

26

27

28

PANGIA, STEPHEN RICHARDS, )
KENT ROBERTS, GEORGE SAMENUK, )
SRIVATS SAMPATH, PETER R. WATKINS, )
KEVIN WEISS, and LIANE WILSON, )
)
                 Defendants, )
)
        and )
)
MCAFEE, INC., )
)
             Nominal Defendant. )
_____)

Plaintiff, Kenneth Dossett, by his attorneys, submits this Derivative Complaint (the "Complaint") against the defendants named herein.

## NATURE AND SUMMARY OF THE ACTION

1.    This is a shareholder's derivative action brought for the benefit of nominal defendant McAfee, Inc. ("McAfee" or the "Company") against certain members of its Board of Directors (the "Board") and certain of its executive officers seeking to remedy defendants' breaches of fiduciary duties, unjust enrichment, statutory violations, and other violations of law.

2.    In gross breach of their fiduciary duties as officers and/or directors of McAfee, the Individual Defendants (as defined herein) colluded with one another to:

        a.    improperly backdate dozens of grants of McAfee stock options to McAfee Chief Executive Officer George Samenuk and several other McAfee executives, in violation of the Company's shareholder-approved stock option plans;

        b.    improperly record and account for the backdated stock options, in violation of Generally Accepted Accounting Principles;

        c.    improperly take tax deductions based on the backdated stock options, in violation of Section 162(m) of the Tax Code;

        d.    produce and disseminate to McAfee shareholders and the market false financial statements and other SEC filings that improperly recorded

and accounted for the backdated option grants and concealed the improper backdating of stock options.

3.    As a result of the Individual Defendants' egregious misconduct, McAfee has sustained millions of dollars in damages, and Schroeder and the other recipients of the backdated stock options have garnered millions of dollars in unlawful profits.

## JURISDICTION AND VENUE

4.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 in that this Complaint states a federal question. This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(2) in that Plaintiff and Defendants are citizens of different states and the matter in controversy exceeds $75,000.00, exclusive of interests and costs. This Court has supplemental jurisdiction over the state law claims asserted herein pursuant to 28 U.S.C. § 1367(a). This action is not a collusive one to confer jurisdiction on a court of the United States which it would not otherwise have.

5.    Venue is proper in this district because a substantial portion of the transactions and wrongs complained of herein, including the defendants' primary participation in the wrongful acts detailed herein, occurred in this district. One or more of the defendants either resides in or maintains executive offices in this district, and defendants have received substantial compensation in this district by engaging in numerous activities and conducting business here, which had an effect in this district.

## PARTIES

6.    Plaintiff Kenneth Dossett, a citizen of the State of Indiana, is, and was at all relevant times, a shareholder of nominal defendant McAfee.

---

7.     Nominal defendant McAfee is a Delaware corporation with its principal executive offices located at 3965 Freedom Circle, Santa Clara, California 95054.   According to its public filings, McAfee and its wholly owned subsidiaries are a worldwide supplier of computer security solutions designed to prevent intrusions on networks and secure computer systems and other digital devices from the next generation of blended attacks and threats.

8.     Defendant George Samenuk ("Samenuk") has served as served as the Company's Chief Executive Officer and as a director since January 2001.   In April 2001, Samenuk was named Chairman of the Company's Board of Directors.   Upon information and belief, Samenuk is a citizen of the State of California.

9.     Defendant William L. Larson ("Larson") served as the Company's Chief Executive Officer from September 1993 to January 2001.   In October 1993, Larson was appointed as a director and was elected to the additional office of President.   Larson served as Chairman of the Board of Directors from April 1995 to January 2001.   Upon information and belief, Larson is a citizen of the State of California.

10.     Defendant Gene Hodges ("Hodges") served as President of the Company since October 2001. Hodges served as President of McAfee's product group from January 20001 to October 2001, and as Vice President of security marketing from August 1998 to January 2000. Hodges joined McAfee in 1995 and served in numerous other management positions with the Company until he left the Company in January 2006.   Upon information and belief, Hodges is a citizen of the State of California.

11.     Defendant Peter R. Watkins ("Watkins") served as President and Chief Operating Officer from December 1999 to January 2001.   Watkins joined Networks Associates in May 1995 as Vice President of International Operations.   Watkins was Vice President of International Operations from

May 1995 to October 1996 and Vice President of Security from October 1996 to January 1997. Watkins was Vice President and General Manager of Security from January 1997 to December 1999. Upon information and belief, Watkins is a citizen of the State of California.

12.     Defendant Srivats Sampath ("Sampath") served as Chief Executive Officer, and a of McAfee.com from December 1998 to September 2002. Sampath served as Vice President of Worldwide Marketing from June 1998 to December 1998. Upon information and belief, Sampath is a citizen of the State of California.

13.     Defendant Stephen Richards ("Richards") served as Executive Vice President and Chief Financial Officer from April 2001 to December 2004 and as Chief Operating Officer from November 2001 to December 2004. Upon information and belief, Richards is a citizen of the State of California.

14.     Defendant Probhat K. Goyal ("Goyal") served as Chief Financial Officer, Vice President of Finance and Administration and as Secretary to the Board of Directors from October 1996 to January 2001. Goyal joined the company in March 1996 and was served as its Vice President of Finance, Corporate Controller and Treasurer from April 1996 to October 1996. Upon information and belief, Goyal is a citizen of the State of California.

15.     Defendant Zachary A. Nelson ("Nelson") Zachary Nelson served as Chief Strategy Officer from April 2001 to October 2001. Nelson served as President and Chief Executive Officer of myCIO.com, the Company's wholly owned subsidiary from December 1999 to April 2001, and as Vice President and General Manager of Network Management from March 1997 to December 1999. Upon information and belief, Nelson is a citizen of the State of California.

16.     Defendant Kent Roberts ("Roberts") served as Executive Vice President since July 2001 and as General Counsel and Secretary since January 2001. Roberts served as Vice President of Legal

Affairs from February 2000 to July 2001, and as Director of Legal Affairs from May 1998 to February 2000. Upon information and belief, Roberts is a citizen of the State of California.

17.     Defendant Dennis L. Cline ("Cline") served as Executive Vice President of Worldwide Sales in 1998. Cline also served as Vice President of North American Sales from September 1994 to October 1995, as Vice President of North American Channel Sales from October 1995 to April 1996, as Vice President of Worldwide Channel Sales from April 1996 to October 1996, and as Vice President of International Sales from October 1996 to January 1998. Upon information and belief, Cline is a citizen of the State of California.

18.     Defendant Kevin Weiss ("Weiss") served as Executive Vice President of Worldwide Sales since July 2003. Weiss served as President of the Company's EMEA region from October 2002 to July 2003. Upon information and belief, Weiss is a citizen of the State of California.

19.     Defendant Arthur Matin ("Matin") served as President of the Company's McAfee Security group from October 2001 to March 2004. Upon information and belief, Matin is a citizen of the State of California.

20.     Collectively, defendants Samenuk, Larson, Hodges, Watkins, Sampath, Richards, Goyal, Nelson, Roberts, Cline, Weiss, and Matin are referred to herein as the "Officer Defendants."

21.     Defendant Robert Dutkowsky ("Dutkowsky") has served as a director of McAfee since April 2001 and as lead independent director since March 2004. Dutkowsky has also served and as a member of the Compensation Committee of the Board (the "Compensation Committee") and as a member of the Audit Committee of the Board (the "Audit Committee") since April 2001. Upon information and belief, Dutkowsky is a citizen of the State of California.

22.     Defendant Denis O'Leary ("O'Leary") has served as a director of McAfee and as a member of the Compensation Committee since July 2003.  Upon information and belief, O'Leary is a citizen of the State of California.

23.     Defendant Leslie Denend ("Denend") has served as a director of McAfee since June 1995 and was President of the Company from December 1997 to April 1998.  From June 1993 to December 1997, Denend was Chief Executive Officer and President of Network General Corporation, which merged with McAfee Associates to form the Company.  Denend served as a member of the Compensation Committee in 1997, and as a member of the Audit Committee in 1998.  Upon information and belief, Denend is a citizen of the State of California.

24.     Defendant Robert Pangia ("Pangia") has served as a director of McAfee since April 2001 and as a member of the Compensation Committee since 2002.  Pangia has also served as a member of the Audit Committee since 2001.  Upon information and belief, Pangia is a citizen of the State of California.

25.     Collectively, defendants Dutkowsky, O'Leary, Denend, and Pangia are referred to herein as the "Compensation Committee Defendants."

26.     Defendant Liane Wilson ("Wilson") has served as a director of McAfee and as a member of the Audit Committee since April 2002.  Upon information and belief, Wilson is a citizen of the State of California.

27.     Collectively, defendants Dutkowsky, Pangia, Wilson, and Denend are referred to herein as the "Audit Committee Defendants."

28.     Collectively, the Officer Defendants, Compensation Committee Defendants, and Audit Committee Defendants are referred to herein as the "Individual Defendants."

## DUTIES OF THE INDIVIDUAL DEFENDANTS

29.     By reason of their positions as officers and/or directors of the Company and because of their ability to control the business and corporate affairs of the Company, the Individual Defendants owed the Company and its shareholders the fiduciary obligations of good faith, trust, loyalty, and due care, and were and are required to use their utmost ability to control and manage the Company in a fair, just, honest, and equitable manner.  The Individual Defendants were and are required to act in furtherance of the best interests of the Company and its shareholders so as to benefit all shareholders equally and not in furtherance of their personal interest or benefit.  Each director and officer of the Company owes to the Company and its shareholders the fiduciary duty to exercise good faith and diligence in the administration of the affairs of the Company and in the use and preservation of its property and assets, and the highest obligations of fair dealing.

30.     The Individual Defendants, because of their positions of control and authority as directors and/or officers of the Company, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein.

31.     To discharge their duties, the officers and directors of the Company were required to exercise reasonable and prudent supervision over the management, policies, practices and controls of the Company.  By virtue of such duties, the officers and directors of the Company were required to, among other things:

      a.      exercise good faith in ensuring that the affairs of the Company were conducted in an efficient, business-like manner so as to make it possible to provide the highest quality performance of their business;

      b.      exercise good faith in ensuring that the Company was operated in a diligent, honest and prudent manner and complied with all applicable federal and state laws, rules, regulations and requirements, including acting only within the scope of its legal authority;

c.   exercise good faith in supervising the preparation, filing and/or dissemination of financial statements, press releases, audits, reports or other information required by law, and in examining and evaluating any reports or examinations, audits, or other financial information concerning the financial condition of the Company; and

d.   exercise good faith in ensuring that the Company's financial statements were prepared in accordance with Generally Accepted Accounting Principles ("GAAP"); and

e.   refrain from unduly benefiting themselves and other Company insiders at the expense of the Company.

32.   The Individual Defendants were responsible for maintaining and establishing adequate internal accounting controls for the Company and to ensure that the Company's financial statements were based on accurate financial information. According to GAAP, to accomplish the objectives of accurately recording, processing, summarizing, and reporting financial data, a corporation must establish an internal accounting control structure. Among other things, the Individual Defendants were required to:

(1)   make and keep books, records, and accounts, which, in reasonable detail, accurately and fairly reflect the transactions and dispositions of the assets of the issuer; and

(2)   devise and maintain a system of internal accounting controls sufficient to provide reasonable assurances that –

(a)   transactions are executed in accordance with management's general or specific authorization;

(b)   transactions are recorded as necessary to permit preparation of financial statements in conformity with [GAAP].

33.   McAfee's Audit Committee Charter provides that the Audit Committee shall be responsible for, among other things,

a.   Discussing with the independent auditors and the Company's financial management, the financial statements and audit findings, including any significant adjustments, management judgments and accounting estimates, the quality of the Company's accounting estimates, the quality of the

---

Company's accounting principles, new accounting policies and disclosure practices, disagreements with management, and any other matters described in SAS No. 61, as modified or supplemented;

b.   Conducting a post-audit review of the financial statements and audit findings, including suggestions for improvements provided to management by the independent auditors;

c.   Before filing the annual report on Form 10-K or any quarterly report on Form 10-Q, reviewing the financial statements and the Company's MD&A disclosures with management and the independent auditors to assess the financial statements and related disclosure to be presented to shareholders; and

d.   Reviewing and recommending to the Board of Directors for inclusion in the 10-K, the audited financial statements and Management's Discussion and Analysis of Financial Condition and Results of Operations.

## FACTUAL ALLEGATIONS

### Stock Option Grants to the Officer Defendants

34.    At all times relevant hereto the Compensation Committee determined the salaries, incentive compensation, and stock option awards for executive officers of McAfee and administered the Company's stock option plans.

35.    From 1997 to 2004, the Compensation Committee granted certain McAfee stock options to the Officer Defendants, as follows:

| Officer | Purported Date of Grant | Exercise Price | Number of Options |
|---------|-------------------------|----------------|-------------------|
| Larson  | 3/20/97                 | $40.00         | 800,000           |
|         | 1/12/98                 | $47.00         | 300,000           |
| Goyal   | 3/20/97                 | $40.00         | 200,000           |
|         | 1/12/98                 | $47.00         | 225,000           |
|         | 5/5/99                  | $12.25         | 100,000           |
| Cline   | 3/20/97                 | $40.00         | 200,000           |

| Officer | Purported Date of Grant | Exercise Price | Number of Options |
|---------|-------------------------|----------------|-------------------|
| Watkins | 3/20/97 | $40.00 | 200,000 |
|         | 1/12/98 | $47.00 | 225,000 |
|         | 5/5/99  | $12.25 | 100,000 |
|         | 1/27/00 | $26.00 | 500,000 |
| Nelson  | 1/12/98 | $47.00 | 225,000 |
|         | 5/5/99  | $12.25 | 200,000 |
|         | 1/2/01  | $4.1875 | 400,000 |
| Sampath | 1/3/01  | $4.969 | 250,000 |
| Samenuk | 1/3/01  | $4.9375 | 1,200,000 |
|         | 1/15/02 | $27.19 | 47,000 |
|         | 1/15/02 | $27.19 | 3,000 |
|         | 1/16/02 | $25.43 | 420,000 |
|         | 5/4/04  | $16.57 | 300,000 |
| Richards | 4/4/01 | $6.00 | 600,000 |
|         | 1/15/02 | $25.43 | 100,000 |
|         | 5/4/04  | $16.57 | 150,000 |
| Hodges  | 1/2/01  | $4.1875 | 300,000 |
|         | 10/9/01 | $15.59 | 300,000 |
|         | 5/4/04  | $16.57 | 150,000 |
| Matin   | 10/30/01 | $18.95 | 500,000 |
|         | 10/8/02 | $8.45 | 150,000 |
| Roberts | 5/6/02  | $16.29 | 100,000 |
|         | 5/4/04  | $16.57 | 75,000 |
| Weiss   | 5/4/04  | $16.57 | 100,000 |

36.     Pursuant to the terms of the Company's shareholder-approved stock option plans, the exercise price of options must be no less than the closing price of McAfee stock on the date of grant.

SHAREHOLDER DERIVATIVE COMPLAINT
- 11 -

37.   Pursuant to APB 25, the applicable GAAP provision at the time of the foregoing stock option grants, if the market price on the date of grant exceeds the exercise price of the options, the company must recognize the difference as an expense.

38.   Pursuant to Section 162(m) of the Tax Code, 26 U.S.C. § 162(m) ("Section 162(m)"), compensation in excess of $1 million per year, including gains on stock options, paid to a corporation's five most highly-compensated officers is tax deductible only if: (i) the compensation is payable solely on account of the attainment of one or more performance goals; (ii) the performance goals are determined by a compensation committee comprised solely of two or more outside directors, (iii) the material terms under which the compensation is to be paid, including the performance goals, are disclosed to shareholders and approved by a majority of the vote in a separate shareholder vote before the payment of the compensation, and (iv) before any payment of such compensation, the compensation committee certifies that the performance goals and any other material terms were in fact satisfied.

39.   In a striking pattern that could not have been the result of chance, each and every one of the foregoing stock option grants was dated just after a sharp drop and just before a substantial rise in McAfee's stock price, as demonstrated in the following chart:

| Purported Date of Grant | Exercise Price | Stock Price 10 Trading Days Before Grant | Stock Price 10 Trading Days After Grant | % Rise in Stock Price After Grant |
|---|---|---|---|---|
| 3/20/97 | $40.00 | $48.00 | $44.25 | 10.6% |
| 1/12/98 | $47.00 | $53.50 | $53.88 | 14.6% |
| 5/5/99 | $12.25 | $14.00 | $12.81 | 4.6% |
| 1/2/01 | $4.1875 | $11.75 | $7.88 | 88.2% |
| 1/3/01 | $4.9375 | $11.75 | $7.94 | 60.8% |
| 4/4/01 | $6.00 | $7.78 | $7.66 | 27.7% |
| 10/9/01 | $15.59 | $12.89 | $19.04 | 22.1% |
| 10/30/01 | $18.95 | $19.87 | $20.83 | 9.9% |
| 1/15/02 | $27.19 | $28.38 | $27.93 | 2.7% |
| 1/16/02 | $25.43 | $28.38 | $28.72 | 12.9% |

| Purported Date of Grant | Exercise Price | Stock Price 10 Trading Days Before Grant | Stock Price 10 Trading Days After Grant | % Rise in Stock Price After Grant |
|---|---|---|---|---|
| 5/6/02 | $16.29 | $18.60 | $20.29 | 24.6% |
| 10/8/02 | $8.45 | $10.63 | $13.65 | 61.5% |
| 5/4/04 | $16.57 | $18.29 | $16.80 | 1.4% |

40.     The reason for the extraordinary pattern set forth in the preceding paragraph is that the purported grant dates set forth therein were not the actual dates on which the stock option grants were made.  Rather, at the behest of the Officer Defendants, the Committee Defendants improperly backdated the stock option grants to make it appear as though the grants were made on dates when the market price of McAfee stock was lower than the market price on the actual grant dates.  This improper backdating, which violated the terms of the Company's shareholder-approved stock option plans, resulted in option grants with lower exercise prices, which improperly increased the value of the options to the Officer Defendants and improperly reduced the amounts the Officer Defendants had to pay the Company upon exercise of the options.

## Dissemination of False Financial Statements

41.     As a result of the improper backdating of stock options, the Company, with the knowledge, approval, and participation of each of the Individual Defendants,

      a.    violated the terms of the Company's shareholder-approved stock option plans;

      b.    violated GAAP by failing to recognize compensation expenses incurred when the improperly backdated options were granted;

      c.    violated Section 162(m) by taking tax deductions based on stock option grants that were not payable solely on account of the attainment of one or more performance goals and violated the terms of the Company's shareholder-approved stock option plans; and

      d.    produced and disseminated to McAfee shareholders and the market false financial statements that improperly recorded and accounted for the backdated option grants.

42.     The Company, with the knowledge, approval, and participation of each of the Individual Defendants, disseminated its false financial statements in, *inter alia*, the following Form 10-K filings:

    a.    Form 10-K for year ended December 31, 1997, filed with the SEC on February 17, 1998 and signed by defendants Larson, Denand, and Goyal;

    b.    Form 10-K for year ended December 31, 1998, filed with the SEC on April 15, 1999 and signed by defendants Larson, Denand, and Goyal;

    c.    Form 10-K for year ended December 31, 1999, filed with the SEC on March 30, 2000 and signed by defendants Larson, Denend, and Goyal;

    d.    Form 10-K for year ended December 31, 2001, filed with the SEC on February 8, 2002 and signed by defendants Samenuk, Richards, Denend, Dutkowsky, and Pangia;

    e.    Form 10-K for year ended December 31, 2002, filed with the SEC on October 31, 2003 and signed by defendants Samenuk, Richards, Denend, Dutkowsky, O'Leary, Pangia, and Wilson; and

    f.    Form 10-K for year ended December 31, 2004, filed with the SEC on March 31, 2005 and signed by defendants Samenuk, Denend, Dutkowsky, O'Leary, Pangia, and Wilson.

43.     Furthermore, from 1997 to 2004, the Company, with the knowledge, approval, and participation of each of the Individual Defendants, for the purpose and with the effect of concealing the improper option backdating:

    a.    disseminated to shareholders and filed with the SEC annual proxy statements that falsely reported the dates of stock option grants to the Officer Defendants; and

    b.    filed with the SEC Form 4 filings that falsely reported the dates of stock option grants to the Officer Defendants.

44.  On May 25, 2005, McAfee filed with the SEC a Form 8-K which stated:

> On May 25, 2006, McAfee, Inc. made the following statement at its Annual Stockholder Meeting with respect to stock option expensing:
>
> "As we have previously indicated in our statements to the press, a number of companies are taking a look at their option granting practices in the late 1990s and early 2000s timeframe. McAfee has voluntarily initiated a review of our own stock option grant practices during this period.
>
> We are also in dialogue with the SEC on an informal basis. If in the course of our review we should find anything of note, we will make the appropriate disclosures."

45.  On May 30, 2006, McAfee issued a press release which stated:

> SANTA CLARA, Calif., May 30 /PRNewswire-FirstCall/ -- McAfee, Inc. (NYSE: MFE), today announced that its Board of Directors has terminated the employment of its General Counsel, Kent Roberts. The Company had previously disclosed that it is reviewing prior practices in connection with grants of employee stock options.
>
> In connection with that review, the Company became aware of one episode involving the General Counsel in 2000 that was improper. As a result, the Board has terminated his employment. The Audit Committee is continuing the review of other option granting practices and has retained independent counsel to assist it in that effort. The Company has had communications on the subject of option grants with staff of both the Securities & Exchange Commission and the Justice Department.

## THE INDIVIDUAL DEFENDANTS' BREACHES OF FIDUCIARY DUTIES

46.  The Officer Defendants breached their fiduciary duties by:

  a.  colluding with the Compensation Committee Defendants to backdate stock option grants;

  b.  colluding with the Audit Committee Defendants to violate GAAP and Section 162(m);

  c.  colluding with the other Individual Defendants to produce and disseminate to McAfee shareholders and the market false financial statements that improperly recorded and accounted for the backdated option grants and concealed the improper backdating of stock options; and

    d.    colluding with the other Individual Defendants to file false proxy statements and false Form 4 filings in order to conceal the improper backdating of stock options.

47.   The Officer Defendants' foregoing misconduct was not, and could not have been, an exercise of good faith business judgment.  Rather, it was intended to, and did, unduly benefit the Officer Defendants at the expense of the Company.

48.   The Compensation Committee Defendants breached their fiduciary duties by:

    a.    colluding with the Officer Defendants to backdate stock option grants;

    b.    colluding with the Officer Defendants and Audit Committee Defendants to violate GAAP and Section 162(m);

    c.    colluding with the other Individual Defendants to produce and disseminate to McAfee shareholders and the market false financial statements that improperly recorded and accounted for the backdated option grants and concealed the improper backdating of stock options; and

    d.    colluding with the other Individual Defendants to file false proxy statements and false Form 4 filings in order to conceal the improper backdating of stock options.

49.   The Compensation Committee Defendants' foregoing misconduct was not, and could not have been, an exercise of good faith business judgment.  Rather, it was intended to, and did, unduly benefit the Officer Defendants at the expense of the Company.

50.   The Audit Committee Defendants breached their fiduciary duties by:

    a.    colluding with the Officer Defendants to violate GAAP and Section 162(m);

    b    colluding with the other Individual Defendants to produce and disseminate to McAfee shareholders and the market false financial statements that improperly recorded and accounted for the backdated option grants and concealed the improper backdating of stock options; and

     c.     colluding with the other Individual Defendants to file false proxy statements and false Form 4 filings in order to conceal the improper backdating of stock options.

51.    The Audit Committee Defendants' foregoing misconduct was not, and could not have been, an exercise of good faith business judgment. Rather, it was intended to, and did, unduly benefit the Officer Defendants at the expense of the Company.

52.    As a direct and proximate result of the Individual Defendants' foregoing breaches of fiduciary duties, the Company has sustained millions of dollars in damages, including, but not limited to, the additional compensation expenses and tax liabilities the Company was required to incur and loss of funds paid to the Company upon exercise of options.

## DERIVATIVE AND DEMAND EXCUSED ALLEGATIONS

53.    Plaintiff brings this action derivatively in the right and for the benefit of the Company to redress defendants' breaches of fiduciary duties and unjust enrichment.

54.    Plaintiff is an owner of McAfee common stock and was an owner of McAfee common stock at all times relevant hereto.

55.    Plaintiff will adequately and fairly represent the interests of the Company and its shareholders in enforcing and prosecuting its rights.

56.    As a result of the facts set forth herein, plaintiff has not made any demand on the McAfee Board of Directors to institute this action against the Individual Defendants. Such demand would be a futile and useless act because the Board is incapable of making an independent and disinterested decision to institute and vigorously prosecute this action.

57.    The Board currently consists of eight directors: defendants Denend, Samenuk, Dutkowsky, O'Leary, Pangia, and Wilson, and directors Robert Buckman and Dale Fuller. The following

directors are incapable of independently and disinterestedly considering a demand to commence and

vigorously prosecute this action:

    a.    Samenuk, because he is directly interested in the improperly backdated stock option grants complained of herein;

    b.    Denend, Dutkowsky, O'Leary, and Pangia, because as members of the Compensation Committee they directly participated in and approved the improper backdating of stock options, as alleged herein, and are substantially likely to be held liable for breaching their fiduciary duties.  Moreover, by colluding with the Officer Defendants and others, as alleged herein, Denend, Dutkowsky, O'Leary, and Pangia have demonstrated that they are unable or unwilling to act independently of the Officer Defendants;

    c.    Dutkowsky, Wilson, Pangia, and Denend, because as members of the Audit Committee they directly participated in and approved the Company's violations of GAAP and Section 162(m), as alleged herein, and are substantially likely to be held liable for breaching their fiduciary duties.  Moreover, by colluding with the Officer Defendants and others, as alleged herein, Dutkowsky, Wilson, Pangia, and Denend have demonstrated that they are unable or unwilling to act independently of the Officer Defendants;

    d.    Samenuk, Dutkowsky, Denend, O'Leary, Pangia, and Wilson, because as directors of the Company they directly participated in and approved the Company's filing of false financial statements and other SEC filings, as alleged herein, and are substantially likely to be held liable for breaching their fiduciary duties.  Moreover, by colluding with the Officer Defendants and others, as alleged herein, Samenuk, Dutkowsky, Denend, O'Leary, Pangia, and Wilson have demonstrated that they are unable or unwilling to act independently of the Officer Defendants.

58.    Furthermore, demand is excused because the misconduct complained of herein was not, and could not have been, an exercise of good faith business judgment.

## COUNT I

### AGAINST THE INDIVIDUAL DEFENDANTS
### FOR BREACH OF FIDUCIARY DUTY

59.    Plaintiff incorporates by reference all preceding and subsequent paragraphs as if set forth fully herein.

60.     As alleged in detail herein, each of the Individual Defendants had a fiduciary duty to refrain from unduly benefiting themselves and other Company insiders at the expense of the Company.

61.     As alleged in detail herein, the Officer Defendants breached their fiduciary duties by:

       a.     colluding with the Compensation Committee Defendants to backdate stock option grants;

       b.     colluding with the Audit Committee Defendants to violate GAAP and Section 162(m);

       c.     colluding with the other Individual Defendants to produce and disseminate to McAfee shareholders and the market false financial statements that improperly recorded and accounted for the backdated option grants and concealed the improper backdating of stock options; and

       d.     colluding with the other Individual Defendants to file false proxy statements and false Form 4 filings in order to conceal the improper backdating of stock options.

62.     The Officer Defendants' foregoing misconduct was not, and could not have been, an exercise of good faith business judgment.  Rather, it was intended to, and did, unduly benefit the Officer Defendants at the expense of the Company.

63.     As alleged in detail herein, the Compensation Committee Defendants breached their fiduciary duties by:

       a.     colluding with the Officer Defendants to backdate stock option grants;

       b.     colluding with the Officer Defendants and Audit Committee Defendants to violate GAAP and Section 162(m);

       c.     colluding with the other Individual Defendants to produce and disseminate to McAfee shareholders and the market false financial statements that improperly recorded and accounted for the backdated option grants and concealed the improper backdating of stock options; and

1
2

      d.     colluding with the other Individual Defendants to file false proxy statements and false Form 4 filings in order to conceal the improper backdating of stock options.

3
4
5
6

64.     The Compensation Committee Defendants' foregoing misconduct was not, and could not have been, an exercise of good faith business judgment. Rather, it was intended to, and did, unduly benefit the Officer Defendants at the expense of the Company.

7
8

65.     As alleged in detail herein, the Audit Committee Defendants breached their fiduciary duties by:

9
10

      a.     colluding with the Officer Defendants to violate GAAP and Section 162(m);

11
12
13
14

      b     colluding with the other Individual Defendants to produce and disseminate to McAfee shareholders and the market false financial statements that improperly recorded and accounted for the backdated option grants and concealed the improper backdating of stock options; and

15
16

      c.     colluding with the other Individual Defendants to file false proxy statements and false Form 4 filings in order to conceal the improper backdating of stock options.

17
18
19
20

66.     The Audit Committee Defendants' foregoing misconduct was not, and could not have been, an exercise of good faith business judgment. Rather, it was intended to, and did, unduly benefit the Officer Defendants at the expense of the Company.

21
22
23
24
25

67.     As a direct and proximate result of the Individual Defendants' foregoing breaches of fiduciary duties, the Company has sustained millions of dollars in damages, including, but not limited to, the additional compensation expenses and tax liabilities the Company was required to incur and loss of funds paid to the Company upon exercise of options.

26
27
28

## COUNT II

### AGAINST THE INDIVIDUAL DEFENDANTS
### FOR VIOLATION OF SECTION 10(b) OF THE SECURITIES
### EXCHANGE ACT AND RULE 10b-5 PROMULGATED THEREUNDER

68.     Plaintiff incorporates by reference all preceding and subsequent paragraphs as if set forth fully herein.

69.     Each of the Individual Defendants intentionally or recklessly employed devices, schemes, and artifices to defraud and engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the Company.

70.     The Company relied upon the Individual Defendants' fraud in granting the Officer Defendants options to purchase shares of McAfee common stock.

71.     As a direct and proximate result of the Individual Defendants' fraud the Company has sustained millions of dollars in damages, including, but not limited to, the additional compensation expenses and tax liabilities the Company was required to incur and loss of funds paid to the Company upon exercise of options.

## COUNT III

### AGAINST THE OFFICER DEFENDANTS
### FOR UNJUST ENRICHMENT

72.     Plaintiff incorporates by reference all preceding and subsequent paragraphs as if set forth fully herein.

73.     The Officer Defendants were unjustly enriched by their receipt and retention of backdated stock option grants, as alleged herein, and it would be unconscionable to allow them to retain the benefits thereof.

74.     To remedy the Officer Defendants' unjust enrichment, the Court should order them to disgorge to the Company all of the backdated stock options they received, including the proceeds of any such options that have been exercised, sold, pledged, or otherwise monetized.

WHEREFORE, Plaintiff demands judgment as follows:

A.     Against all of the Individual Defendants and in favor of the Company for the amount of damages sustained by the Company as a result of the Individual Defendants' breaches of fiduciary duties and statutory violations;

B.     Ordering the Officer Defendants to disgorge to the Company all of the backdated stock options they received, including the proceeds of any such options that have been exercised, sold, pledged, or otherwise monetized;

C.     Granting appropriate equitable relief to remedy Defendants' breaches of fiduciary duties;

D.     Awarding to plaintiff the costs and disbursements of the action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

E.     Granting such other and further relief as the Court deems just and proper.

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury.

Dated: _5/30/06_                                                    Respectfully submitted,

**GREEN WELLING, LLP**

Robert S. Green
Avin P. Sharma
595 Market Street, Suite 2750
San Francisco, CA 94105
Telephone: (415) 477-6700
Facsimile: (415) 477-6710
cand.uscourts@classcounsel.com

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Eric L. Zagar
James H. Miller
**SCHIFFRIN & BARROWAY, LLP**
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056
ezagar@sbclasslaw.com

*Attorneys for Plaintiff*

## VERIFICATION

I, **Kenneth M. Dossett** hereby verify that I have reviewed the Complaint and authorized its filing and that the foregoing is true and correct to the best of my knowledge, information and belief.

DATE: _____5/30/06_____

_____
**KENNETH M. DOSSETT**